Elwood J. Clark and Hazel V. Clark, Husband and Wife v. Commissioner. Tracy J. Mosteller and Ethel. C. Mosteller, Husband and Wife v. Commissioner. Ernest DeCamp and Laura V. DeCamp, Husband and Wife v. Commissioner.
Clark v. Commissioner
Docket Nos. 9059, 9135, 9167.
United States Tax Court
1946 Tax Ct. Memo LEXIS 227; 5 T.C.M. (CCH) 236; T.C.M. (RIA) 46081; April 1, 1946
William P. Heyne, Esq., 401 First National Bank Bldg., Canton 2, Ohio, for the petitioners. W. W. Kerr, Esq., for the respondent. DISNEY
Memorandum Findings of Fact and Opinion DISNEY, Judge: These cases, consolidated for hearing, involve income tax for the calendar year 1943. Deficiencies were determined as follows: Dkt. No.
Name
Amount
9059
Elwood J. Clark and Hazel V.
Clark
$256.53
9135
Tracy J. Mosteller and Ethel C.
Mosteller
224.13
9167
Ernest DeCamp and Laura V.
DeCamp
323.75
*228 The questions presented are whether petitioners are entitled to deduction for cost of cleaning work clothes, for taxes on cigarettes, for damage to, and depreciation upon, automobiles, for cost of accident insurance, for allowances paid to wives, and for charitable contributions to soldiers; and whether the respondent is estopped to determine the deficiencies. The question of estoppel was raised by a motion for summary judgment supported by petitioners' affidavits. Decision on such motion was reserved until determination of the merits, and the motion will be treated as one of the issues herein. From evidence adduced, we make the following Findings of Fact The petitioners are residents of Ohio and all the returns involved were filed with the collector for the 18th district of Ohio. All of such returns were joint returns by husband and wife. The petitioners Elwood J. Clark and Ernest DeCamp during the year 1943 worked at Timken Roller Bearing Plant near Canton, Ohio. Clark also worked to some extent for the Climax Manufacturing Co., and DeCamp also did some work for Loew's, Inc., about three evenings a week. Each of the petitioners, Clark, DeCamp, and Mosteller turned over to *229 his wife a part of his earnings, Clark turning over to his wife about $700, De Camp turning over to his wife about $100 per month, and Mosteller turning over to his wife about $800. DeCamp's wife spent a part for household expenses and a part for herself, the amounts not being allocated. Clark and Mosteller each made charitable contributions to soldiers. Clark's contributions were to a son who was in active military duty, also to the "U.S.O." Mosteller's charitable contributions were made to some soldiers, the amount being $200. The record does not show the amount of the contributions made by Clark. Clark and DeCamp incurred expenses for the cleaning of work clothes worn by them at the Timken Roller Bearing Plant, and not worn elsewhere. The clothes worn at work became saturated with oil, could be worn only one day at a time and had to be cleaned. Dirty clothes were dangerous. They became baggy and sagged here and there, and would catch in revolving machinery. A place was provided for changing clothes. DeCamp spent $104 for the cleaning of such clothes. The amount spent by Clark for such services was not shown. DeCamp and his wife smoked cigarettes, each about a package a day, *230 and paid cigarette tax. Clark also smoked cigarettes, as did his two daughters. The amount of tax is not shown by the record as to any taxpayer. DeCamp's automobile was damaged during 1943 to the extent that it cost him $65 for repairs. He was not compensated for that amount by any insurance. He used the car, which was a 1938 Pontiac, costing $1,140, for transportation to and from his work. He lived about five miles from the Timken Roller Bearing Plant. Clark also owned an automobile and used it to go back and forth to his work, the distance being about six and one-fourth miles each way. Ninety per cent of Clark's use of his car was for working purposes. Neither Clark nor DeCamp proved the amount of any depreciation, and Clark did not prove cost or age of his car. Both Clark and DeCamp purchased accident insurance incidental to their employment, but the cost thereof was not shown. Each of the petitioners presented a motion for summary judgment, in substance contending that a refund had been made to him after payment of tax and prior to the determination of the deficiency, and that therefore the Commissioner was estopped and had no authority, after paying such refund, to determine *231 deficiency. The motion of Clark and wife was supported by affidavits, but no affidavits were offered by petitioners Mosteller and DeCamp. The respondent offered evidence on the motion. From such affidavits and evidence, we find that a few months after the filing of return by Clark and wife, they received a refund check from the Commissioner of Internal Revenue for overpayment withheld from their earnings at the source; that there is no evidence as to whether DeCamp, Mosteller and their wives received such refunds; that the refund was only tentative, was based upon a comparison of the amount of tax withheld by employer with the declaration of income tax liability by the taxpayer, and was subject to a later audit of the returns; that with the refund check which petitioners Clark and wife received was the following notice: The enclosed check represents a refund of income tax paid by you during 1943 (by with-holding from wages, or otherwise) which is in excess of the amount due as shown on your return. The mathematical computation of your tax has been verified and corrected, if necessary, but your return has not yet been completely audited. If the final audit of your return develops *232 that an adjustment is necessary, you will be notified. COLLECTOR OF INTERNAL REVENUE. The procedure followed in paying such refunds provided in part that extensive audit of returns or other checking methods should not be adopted which would delay the issuance of the refund checks; that the original schedule received should be reviewed only to the extent necessary to determine that the schedule is in proper form and that the total amount is correct; that the returns would be subjected to the usual audit in the regular course and that any additional tax or overpayment be based upon the difference between the correct liability and that reported on the return by the taxpayer. The refunds were made on the taxpayer's own computation, the overpayment as indicated on the income tax return being accepted for that purpose. That was the policy followed by the Internal Revenue Bureau. Opinion As is indicated by the findings of fact, the record in this case is in an unsatisfactory condition, proof being offered on only a minor portion of the issues involved. Taking up the various points contended for, we first dispose of the contention that amounts paid to the petitioners' wives should *233 be the subject of deduction. In effect, it is urged that this was paid to the wives for consortium, or household services. It is also suggested that the returns being joint returns of husband and wife, the amounts thereof may be considered gifts to the wives, are not reportable as income by her and should be exempted from taxation as part of the aggregate gross income of the parties. We think the contention is without merit. The amount of money was earned by the husband and no expenditure thereof in trade or business, so as to justify a deduction, is shown; nor is there any showing that the amount was expended for the collection of income. We hold that such deductions are not allowable. The petitioner DeCamp proved an expenditure of $104 for laundry and cleaning upon work clothes used only at the factory where he was working. Such clothes were necessarily cleaned daily because of the hazards of the business. In our opinion, the expense is a proper deduction and it is allowed to the extent of $104 to petitioner DeCamp. [1] The amount, if any, of such expense, or of cost of such clothing, for the other petitioners is not shown, and therefore no deduction is allowed to them, on that *234 ground. Claim was made for the deduction of accident insurance purchased in connection with the work of petitioners Clark and DeCamp. No such proof was made as to petitioner Mosteller. The deduction may not be allowed, however, because the amount expended is nowhere shown. This renders it unnecessary to pass upon other objections made by the respondent. Petitioner Clark and DeCamp owned automobiles and used same in going to and from their work, and contention is made for depreciation. The claim may not be allowed for the reason that the amount of depreciation is not shown. The use in transportation to work was a personal, nondeductible matter. This likewise renders it unnecessary to pass upon any other objection. DeCamp's automobile was demolished to the extent that he was forced to spend $65 for repairs. He was not compensated for that amount by insurance. The respondent *235 argues that, under Regulations 111, section 29.23(e)-1, the damage may have been occasioned by the willful act or negligence of the taxpayer, and therefore not deductible. We think the petitioner DeCamp made a prima facie case and hold that the $65 is a proper deduction, no evidence being offered by the respondent on the point. Contention is also made for deduction of taxes paid upon cigarettes. No proof was made of the amount of such tax, but the amount of cigarettes used was proved, 730 packages by DeCamp and wife. Deduction is disallowed, however, since neither the Federal excise tax nor the Ohio cigarette tax was upon the consumer, and the Ohio sales tax specifically excepts cigarettes. Amount of cigarettes purchased was not shown by other petitioners. Petitioners Clark and Mosteller made charitable contributions to soldiers in the military service of the United States, and it is contended by the petitioners that such contributions are for the indirect benefit of the United States. We do not agree. The mere fact that the donees were soldiers is obviously insufficient to bring the contributions within the necessary statute, section 23(o), Internal Revenue Code *236 . Clark's contribution was to his son who was in the military service. There is proof of some contribution by the petitioner Clark to the "U.S.O.," but the amount is nowhere proven and can not, for that reason, if no other, be allowed as a deduction. Finally, we consider the theory advanced by the petitioners (with no proof, except affidavits attached to petitioner Clark's motion for summary judgment, which affidavits concerned only his own case) that the Commissioner may not determine a deficiency, if prior thereto he has made a refund to the taxpayer, in connection with the declaration of estimated tax by the taxpayer and the withholding of tax by his employer. The gist of the petitioners' contention is that under Title 26, United States Code, section 3801(a) (sec. 3801 of the Internal Revenue Code), it is provided as follows: (a) Definitions. - For the purpose of this section - (1) Determination. The term "determination under the income tax laws" means - * * * * *
(C) A final disposition by the Commissioner of a claim for refund. For the purposes of this section a claim for refund shall be deemed finally disposed of by *237 the Commissioner - (i) as to items with respect to which the claim was allowed, upon the date of allowance of refund or credit or upon the date of mailing notice of disallowance (by reason of offsetting items) of the claim for refund, and (ii) as to items with respect to which the claim was disallowed, * * * The petitioners therefore argue that the payment of the refund to the petitioner Clark is a final disposition of the matter of his taxes for the year 1943. In our opinion, the contention should not be sustained. The statute quoted, on its face, states that, "For the purposes of this section," a claim for refund shall be deemed finally disposed of as to items where credit was allowed upon the date of allowance of refund. The petitioners appear to us to be attempting to extend the statute far beyond "the purposes of this section," and to make it apply where it was not intended, that is, to cover the situation which arose in connection with the "pay-as-you-go" tax plan and the declaration of income tax liability by a taxpayer, together with the withholding of tax by his employer. We do not think the section has application to such situation. The proof shows that the refund made *238 was tentative only, and subject to "usual audit in the regular course of business," and that there might be additional tax or additional overpayment, depending upon the correct liability as finally determined. The taxpayer was particularly given notice that his return had not yet been completely audited, and that adjustment might be necessary. The fact, as contended by the petitioners, that Title 26, United States Code, section 3746, provides that refund erroneously made may be recovered by suit brought in the name of the United States is not, in our opinion, determinative or applicable to the situation here involved. We do not consider that there was erroneous refund, but merely a tentative return to the taxpayer based upon the amount withheld and his estimate, all subject to final determination of the tax actually owed. The "Current Tax Payment Act of 1943," applicable here, provides, in section 1622(f)(2): "For refund or credit in cases of excessive withholding, see section 322(a)." Turning to section 322(a)(1)(2) of the Internal Revenue Code, we find: SEC. 322. REFUNDS AND CREDITS. (a) Authorization. - (1) Overpayment. - Where *239 there has been an overpayment of any tax imposed by this chapter, the amount of such overpayment shall be credited against any income, war-profits, or excess-profits tax or installment thereof then due from the taxpayer, and any balance shall be refunded immediately to the taxpayer. (2) Excessive withholding. - Where the amount of the tax withheld at the source under Subchapter D of Chapter 9 exceeds the taxes imposed by this chapter against which the tax so withheld may be credited under section 35 the amount of such excess shall be considered an overpayment. [Italics supplied.] It thus appears that there is overpayment, calling for refund, only where payment has been made in excess of taxes "imposed by this chapter," and after credit to any income, war profits, or excess profits taxes then due from the taxpayer. This, together with the fact that the moneys returned were specifically described in the notice to taxpayer as the "excess of the amount due as shown on your return" ( underscoring ours) - not the excess over "taxes imposed by this chapter," or "tax or installment thereof then due" under the language 6f section 322(a)(1)(2), convinces us that the amount returned should *240 not be considered a refund, within the meaning of section 3801. No statute called to our attention prohibits such a tentative return of money, subject to final audit and adjustment, and, in our opinion, it is not, and upon the face of the notice given the petitioner, shows that it is not, the "final determination" which the petitioner calls it. The Commissioner particularly did not make a decision upon the merits of any claim for refund, but withheld that decision and determination. This is in line with section 27[*] of the Internal Revenue Code, which, defining deficiency, provides that rebates already made shall be considered. This section alone, in our opinion, is answer to petitioners' theory. Other statutes referred to by the petitioners are not found to be helpful under the facts shown here. They have been examined and are disposed of by what we have said above. We therefore deny the motions of all the petitioners for summary judgment. Those of petitioners Mosteller and DeCamp and their wives are denied for the further reason that no proof was made that refunds had ever been claimed or received. The petitioners Clark and DeCamp apparently considered that they need not prove *241 what they had stated in their returns, which they testified were true reports. The trial was de novo. Moreover, even the returns were not offered in evidence. Neither petitioner Mosteller nor his wife appeared for trial. Decision will be entered under Rule 50 in Docket No. 9167, and decisions will be entered for the respondent in Docket Nos. 9059 and 9135. Footnotes
1. The expense is clearly within I.T. 3373 ( C.B. 1940-1, p. 28), allowing deduction of cost of wearing apparel specifically required in business, used solely therein and not adapted to general wear, so that it may be said to replace the wearer's regular clothing. See also I.T. 3176↩ ( C.B. 1938-1, p. 348).